**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **1:21-CR-618-ABJ** |
| | : | |
| **v.** | : | |
| | : | |
| **RILEY JUNE WILLIAMS** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Riley June Williams, by and through her attorneys, submits the within sentencing memorandum addressing the sentencing factors set forth at 18 U.S.C. § 3553(a) as well as Ms. Williams' objections to the Presentence Investigation Report ("PSR"). Sentencing in this matter is scheduled for February 22, 2023 at 9:30 a.m.

## I.     BACKGROUND

On November 21, 2022, following a two-week trial, a jury returned verdicts of guilty against Ms. Williams on Counts One (Civil Disorder, 18 U.S.C. § 231), Three (Resisting or Impeding Certain Officers, 18 U.S.C. § 111(a)(1)), and Five through Eight (Entering and Remaining/Disorderly Conduct in a Restricted Building, 18 U.S.C. §§ 1752(a)(1) and (2); Disorderly Conduct/Parading in a Capitol Building, 40 U.S.C. §§ 5104(e)(2)(D) and (G)) of the Indictment. The jury was unable to reach a verdict as to Counts Two (18 U.S.C. § 1512(c)(2), Obstruction of an Official Proceeding) and Four (Aiding and Abetting Theft of Government Property, 18 U.S.C. §§ 641, 2), and the Government subsequently dismissed these counts pursuant to Fed. R. Crim. P. 48(a). Ms. Williams was detained following the verdict.

A draft PSR was circulated to the parties on January 18, 2023.  Defense counsel lodged objections to the PSR with the United States Probation Officer.  Those objections that affect the calculation of the sentencing guidelines shall be summarized and further briefed herein.[1]

## II.   OBJECTIONS TO THE PRESENTENCE REPORT

### A.   Base Offense Level

At issue in this matter is whether the Court should apply the Aggravated Assault guideline at USSG § 2A2.2 or the Obstructing or Impeding Officers guideline at USSG § 2A2.4 to calculate Ms. Williams' base offense level.  The PSR sets Ms. Williams' base offense level for Counts 1 (Civil Disorder) and 3 (Resisting and Impeding Officers) using USSG §2A2.2, which is the aggravated assault guideline.  Ms. Williams submits that the more appropriate guideline to set her base offense level for Counts 1 and 3[2] is found at USSG § 2A2.4, Obstructing and Impeding Officers.  Defense counsel has submitted an objection in this regard to the PSR writer.

---

[1] Defense counsel lodged extensive objections and corrections to the Offense Conduct section of the PSR with the Probation Officer because many of the "facts" set forth therein either were not proven at trial, or were entirely disproven at trial. Given that this Honorable Court presided over the trial and is intimately familiar with the facts of Ms. Williams case and January 6th in general, those objections shall not be detailed at length herein.  Suffice it to say, Ms. Williams' positions on the various sentencing matters at issue rely on the facts that were established at trial, not the Government's dramatization of the facts that it supplied to the Probation Officer. Ms. Williams has a due process right to a sentence based on accurate information.  *See Townsend v. Burke*, 334 U.S. 736, 740-41 (1948).

[2] Currently pending before the Court is Ms. Williams' Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29.  In the supplemental briefing filed on December 21, 2022 (ECF No. 131), Ms. Williams' argued that her conviction of Resisting or Impeding Certain Officers under 18 U.S.C. § 111(a)(1) (Count 3) must be vacated because the conviction under §111(a)(1) cannot be based on a finding that Ms. Williams committed that offense with the intent to commit civil disorder, 18 U.S.C. § 231(a)(3) (Count 1).  As of this writing, the Rule 29 motion remains pending before this Honorable Court, although an oral ruling is anticipated to occur on February 16, 2023.  In the event the Court rules in favor of Ms. Williams and vacates her conviction on Count 3, then USSG § 2A2.4 would automatically apply.  However, even if this Honorable Court does not vacate Ms. Williams' conviction for Resisting or Impeding Certain Officers (18 U.S.C. § 111(a)(1)), USSG § 2A2.4 is still the appropriate guideline to apply to the grouped counts – Counts 1 and 3.

Count 3, Resisting or Impeding Certain Officers, is indexed to both guidelines while Count 1, Civil Disorder, is not indexed to any particular guideline.  In the absence of an expressly promulgated guideline, USSG § 2X5.1 directs the Court to apply the most analogous guideline.  The PSR indicates that the most analogous guideline is §2A2.4; however the PSR writer utilizes the cross-reference at §2A2.4(c)(1) and applies §2A2.2 as the base offense level for Count 1 (Civil Disorder) guideline.  The PSR writer applied this cross-reference based on a finding that Ms. Williams' conduct constituted aggravated assault.  The PSR also assigns §2A2.2 as the base offense level for Ms. Williams' conviction on Count 3, Resisting and Impeding Certain Officers under 18 U.S.C. § 111(a)(1).  Counts 1 and 3 are grouped, thus the PSR as written applies USSG § 2A2.2 as the base offense guideline.  This is incorrect.

1.     **Civil Disorder cannot be "Another Felony" for Purposes of the Cross-Reference at §2A2.4(c)(1)**

Relevantly here, Application Note 1 to USSG § 2A2.2 defines an "aggravated assault" as "a felonious assault that involved . . . an intent to commit another felony."  Here, the jury indicated in the special interrogatories to Count 3, Resisting or Impeding Certain Officers under 18 U.S.C. §111(a)(1), that it found beyond a reasonable doubt that Ms. Williams resisted/impeded officers with the intent to commit the felony contained in Count 1, which is Civil Disorder under 18 U.S.C. §231(a)(3).

As this Honorable Court observed in the matter of *United States v. Hamner*:

> It strikes me that if the Commission is asking: Did you commit the assault with the intent to commit some other offense? It didn't mean with the intent to commit that exact same assault, just charged differently.  They could have easily defined 'another offense' as any offense with any different elements that's a different offense, but they didn't.

> It's also important to note that the cross reference says you go to aggravated assault if the assault on the police officer involved the intent to commit another felony, not the same intent needed to satisfy the elements of another felony, not that it was committed during the commission of another

felony.  This suggests that the guideline is meant to cover just the situation in the cases that you cited, where the assault on the police officer is intended to facilitate or further or advance or succeed in the commission of or evasion of apprehension for a second, different crime.

Sentencing Transcript, *United States v. Hamner*, 1:21-cr-689, p. 20:21-25, p. 21:1-11.[3]  Further Your Honor noted the drastic difference in sentencing ranges that occur when using §2A2.2 versus §2A2.4 as the base guideline: "We have a difference of ten levels on the guidelines chart for the exact same set of facts." *Id*. at p. 22:9-10.  In resolving this issue in *Hamner*, Your Honor noted "at best, the cross reference is ambiguous.  And under such circumstances the Rule of Lenity requires the adoption of the definition that favors the defendant." *Id*. at p. 24:1-3.

Ms. Williams recognizes that the Court cabined its ruling to Mr. Hamner's particular case, but submits that the logic and reasoning employed by Your Honor apply with equal force to the facts of this case.   Here, the facts that gave rise to Ms. Williams' convictions for both Count 1 and 3 are the same – they occurred in the Rotunda over the span of approximately 25 minutes.  It is illogical and circular to contend that Ms. Williams forcibly resisted and impeded officers (Count 3) with the intent to obstruct or impede the same officers, at the same time.[4]

## 2. The Sentencing Guidelines' Definition of "Aggravated Assault" is Unreasonable and Not Entitled to Deference

The only argument for applying the aggravated assault guideline at §2A2.2 to either Counts 1 or 3 does not come from the guideline directly, but from the definition of "aggravated assault" in the commentary to §2A2.2.  However, that definition appears in the *commentary* to

---

[3] The *Hamner* transcript has been previously filed with the Court in this case – it is attached as Exhibit B to Docket Entry 131, Ms. Williams' Supplemental Brief in Support of Motion for Judgment of Acquittal and Response to Court's Minute Order Entered November 22, 2022. (Doc. 131).

[4] The defense has fully developed this argument in Ms. Williams' Supplemental Brief in Support of Motion for Judgment of Acquittal and Response to Court's Minute Order Entered November 22, 2022 (Doc. 131), and incorporates it herein.

the guideline rather than the guideline itself.  This distinction is important because the commentary to the Sentencing Guidelines is not accorded the full force of the guideline, but rather is considered as "an agency's interpretation of its own legislative rule." *Stinson v. United States*, 508 U.S. 36, 44 (1993).  In this Circuit, it is well-established that the Sentencing Guideline's application notes do not qualify for deference under *Stinson* if they "expand[] rather than interpret[] the Guideline." *United States v. Winstead,* 890 F.3d 1082, 1091 (D.C. Cir. 2018). Further, as the Supreme Court made clear in a recent decision, there are important limits to the deference courts give to an agency's interpretation of its own rules.  *See generally Kisor v. Wilkie*, 139 S. Ct. 2400, 2424-2418 (2019).

The *Kisor* Court held that, in order to be granted deference (referred to as *Auer* deference in reference to *Auer v. Robbins*, 519 U.S. 452 (1997)), the agency's interpretation must be of a regulation that is genuinely ambiguous.  *Kisor*, 139 S. Ct. at 2415.  Genuine ambiguity cannot be determined based solely on the plain language of the regulation.  Instead, courts must exhaust all the "traditional tools" of construction, including consideration of the text, structure, history and purpose of the regulation.  *Id.* (citations omitted).

The Sentencing Guidelines have separate guidelines for Aggravated Assault (§2A2.2), Assault (§2A2.3) and Obstructing or Impeding Officers (§2A2.4). Meanwhile, the federal statute for assaulting officers, 18 U.S.C. § 111, includes three degrees of assault. For simple assault, the maximum punishment is not more than 1 year.  For offenses that involve physical contact or the intent to commit another felony, the maximum punishment increases to 8 years.  Both of these circumstances are found in the same subsection as simple assault, 18 U.S.C. § 111(a).  Then, Congress wrote a separate subsection explicitly titled "Enhanced Penalty" which applies to offenses involving a dangerous weapon or bodily injury, *see* 18 U.S.C. § 111(b), and increases the statutory maximum to 20 years.  Congress thus made a clear distinction in both the structure

of the statute and the escalating punishments.  The only offenses that qualify for an "enhanced penalty" of up to 20 years in prison are those that involve a dangerous weapon or bodily injury. While physical contact and the intent to commit another felony make a defendant subject to a greater sentence than simple assault, those circumstances fall closer, both in penalty and text, to simple assault than to offenses involving a dangerous weapon or bodily injury.

These distinctions, enacted by Congress, provide important context when determining the weight that should be afforded to the definitions of "aggravated assault" within the commentary to §2A2.2.  The commentary lists four categories of aggravated assault.  Three of them are directly tied to the distinction Congress created within the statute itself – use of a dangerous weapon, bodily injury, and strangulation, which by its nature carries a serious risk of bodily injury.  *See* USSG § 2A2.2, Application Note 1.  The fourth category – intent to commit another felony – is an outlier because it is unrelated to bodily injury or the risk of it.  The Sentencing Commission simply elevated intent to commit another felony into the next more serious category despite the distinctions made by Congress within the statute itself.  The Sentencing Commission, then, made the "intent to commit another felony" prong of 18 U.S.C. 111(a)(1) tantamount to the aggravated assault crimes contained in the "enhanced penalty" prong of 18 U.S.C. § 111(b), even though the statutory maximums for the different prongs vary by 12 years. Notably, and without explanation, the Sentencing Commission did not elevate the "physical contact" prong of 18 U.S.C. § 111(a)(1).  There is simply no justification for the Sentencing Commission to treat the two prongs of 18 U.S.C. § 111(a)(1) differently from each other and doing so is in clear contravention of the distinctions created by Congress. For these reasons, USSG § 2A2.2 is not genuinely ambiguous and thus no deference should be given to the commentary that elevates the intent to commit another felony to an aggravated assault.  The definition of aggravated assault

can be determined directly through the traditional tools of construction by examining the relevant statute directly.[5]

### 3.      The Court Should Use USSG § 2A2.4 for the Base Offense Level

USSG § 2A2.4 is clearly the appropriate guideline for both Counts 1 and 3.  Notably, as the Court and the parties will recall, at the charge conference conducted during the trial, the Government elected to remove the word "assault" from the jury instructions and verdict slip as related to Count 3 and also indicated that it was not proceeding on the "physical contact" theory of 18 U.S.C. § 111(a)(1).  Government counsel indicated that this decision was made because Ms. Williams' conduct in the Rotunda did not rise to the level of forcible physical contact with officers.[6]  As a result of the Government's concessions, the jury was instructed that to convict Ms. Williams of Count 3, it had to find beyond a reasonable doubt that, *inter alia*, she forcibly resisted, opposed, impeded, intimidated or interfered with officers.

A common-sense approach shows that USSG § 2A2.4 is the guideline that most appropriately fits the facts of this case.  This guideline, entitled Obstructing or Impeding Officers, incorporates that the victim was a governmental officer – which is an element of both Counts 1 (18 U.S.C. §231, Civil Disorder) and 3 (18 U.S.C. § 111(a)(1), Resisting and Impeding Certain Officers).  Moreover, the Government conceded that "assault" was not the appropriate

---

[5] Even if the Court were to find §2A2.2 is genuinely ambiguous, an agency's interpretation must still be "reasonable" for it to control.  *Kisor,* 139 S. Ct. at 2415 (citation omitted).  In *Kisor,* the Supreme Court was clear: "And let there be no mistake: That is a requirement the agency can fail."  *Id.* at 2416.  In this case, the Sentencing Commission failed the reasonableness test by making assaults with the intent to commit another felony equivalent to assaults that result in or risk bodily injury.  This is an unreasonable interpretation in light of the statute and common-sense.  An intent to commit another felony, by itself, does not make an assault equally serious as one that creates risk of bodily injury.

[6] This is defense counsels' recollection of the Government's position and is not meant to be a direct quote.

characterization of Ms. Williams' conduct on January 6th and the verb was removed from the jury's consideration.  It would be a denial of due process to sentence Ms. Williams' pursuant to a guideline that is untethered from the crime she actually committed.  The appropriate guideline to calculate Ms. Williams' base offense level is USSG § 2A2.4.

**B.      BODILY INJURY AND OFFICIAL VICTIM ENHANCMENTS**

In the event this Honorable Court does not find in favor of Ms. Williams with respect to the base offense level and finds §2A2.2 to be the applicable guideline, Ms. Williams maintains objections to the 3-level enhancement for bodily injury to the victim (USSG § 2A2.2(b)(3)(A)) and the 6-level enhancement applied for official victim (USSG § 3A1.2(b)).

In Paragraph 58 of the PSR, the Probation Officer assigns a 3-level enhancement to Ms. Williams' offense level pursuant to USSG § 2A2.2(b)(3)(A) because "another rioter" sprayed Officer R.D. and because Officer R.B.E. was "incapacitated by the fight with the mob."  (PSR, ¶58).  As the Court and the parties are fully aware, Ms. Williams did not possess or use any "spray" during the events of January 6th.  Further, it is undisputed Ms. Williams did not strike or injure any officers on January 6th.  Accordingly, it would be entirely inappropriate to enhance her offense level based on injuries to the officers that were caused entirely by others.

Further, with respect to the 6-level enhancement applied pursuant to USSG § 3A1.2(a)(1) and (2) (PSR ¶69), there is nothing in the record to substantiate a finding that Ms. Williams' conduct was "motivated by the fact that the victim was a government officer or employee . . ." *See* USSG § 3A1.2, comment. (n.3).  Ms. Williams' conduct was not directed towards the officers because of who they were, but rather because they were in the Rotunda at the time of the January 6th events and directing the protestors to leave the building.

### C.   OBSTRUCTION OF JUSTICE ENHANCEMENT

Paragraph 61 of the PSR assigns a 2-level enhancement to Ms. Williams' offense level pursuant to USSG §3C1.1 for obstruction of justice based on a finding that Ms. Williams deleted some of her chats and directed others to do so, used software to wipe the contents of her computer, asked individuals to remove videos of her and factory reset her cell phone.  While the Government did present some proof that Ms. Williams engaged in some of this conduct relative to the instant offense, there is equal proof that Ms. Williams was in fear for her own safety because of her ex-boyfriend, Michael Prodanov, who was actively stalking her at the same time. There is overwhelming evidence that he was stalking her, threatening her, accessing her accounts, providing information to law enforcement and others, not only to see her prosecuted but to embarrass her as well.  Paragraph 86 of the PSR details just some of the disturbing conduct of Mr. Prodanov towards Ms. Williams.  Some of her conduct that the PSR ascribes to Ms. Williams obstructing justice were, in reality, means to evade the stalking by Mr. Prodanov.

### D.   RESTITUTION CONCERNING SPEAKER PELOSI'S LAPTOP

Ms. Williams objects to Paragraph 172 of the draft PSR, which indicates that the Government advised it will be seeking restitution "for the defendant's role in the theft of the gavel and the laptop from Speaker Pelosi's office."  It is inappropriate for the Government to seek restitution for the loss of Speaker's laptop or any gavels taken from her office because Ms. Williams was not convicted of the theft of these items.

As the District of Columbia Court of Appeals has explained, "[r]estitution is exclusively a creature of statute . . . and comes with important restrictions."  *United States v. Udo*, 795 F.3d 24, 33 (D.C. Cir. 2015) (citing *United States v. Moore*, 703 F.3d 562, 573 (D.C. Cir. 2012) and 18 U.S.C. § 3556).  If a defendant was convicted of an offense, the sentencing court may order restitution to be paid to the victim of that offense. *See Udo*, 795 F.3d at 33 (citing 18 U.S.C. §§

3585(d), 3563(b)(2), 3556, 3663(a)(1)(A) and 3663A(a)(1)).  "But the relevant statutes do not even contemplate – much less expressly allow – that a court may order a defendant to pay restitution for offenses related to, but distinct from, the offenses of conviction."  *Id.* (citing *Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that Congress "authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.").

Here, the jury could not reach a verdict on Count 4, Theft of Government Property, 18 U.S.C. § 641.  The count was subsequently dismissed by the Government.  Accordingly, restitution is not appropriate under 18 U.S.C. § 3663A because Ms. Williams was not convicted of any offense concerning the property stolen from Speaker Pelosi's office.

E.   **OBJECTION TO INFORMATION CONCERNING FIRST AMENDMENT PROTECTED CONDUCT**

The PSR includes multiple paragraphs concerning Ms. Williams' interest in and connection to Nick Fuentes and his followers, the so-called Groyper Army.  Irrespective of the unsavory or unpopular views of, Fuentes and the Groypers, Ms. Williams' interest in them is still protected entirely by the First Amendment to the United States Constitution.  And while the Court can receive and consider any and all information concerning the background, character and conduct of a defendant appearing for sentencing, 18 U.S.C. §3661,[7] it is inappropriate for a court to base a sentence "to any degree on activity or beliefs protected by the first amendment." *United States v. Lemon*, 723 F.2d 922, 938 (D.C. Cir. 1983).  "The first amendment demands extraordinary safeguards whenever the state would use against an individual his association with

---

[7] Although Ms. Williams recognizes that the Court can receive the information set forth in Paragraphs 93 and 94 under 18 U.S.C. § 3661, the accuracy of the information must be considered.  The PSR writer admits that many of the definitions provided were based on "independent internet research," which Ms. Williams assumes to be the PSR writer's own Google searches of various terms.

others on the basis of shared beliefs.  This is particularly true when those beliefs place the group outside the mainstream of our society and beyond the sympathies and perhaps even the comprehension of the average citizens." *Id*. at 943.  A sentence based to any degree on beliefs protected by the First Amendment is constitutionally invalid.  *Id.*  at 938.

### F.        OBJECTION TO PARAGRAPH 76

Ms. Williams objects to the inclusion of the information contained in Paragraph 76 of the PSR.  Ms. Williams has not been charged in connection with the information set forth by the PSR writer, and while a sentencing court is authorized to consider "prior *similar* adult criminal conduct not resulting in a criminal conviction," for purposes of an upward departure under USSG § 4A1.3(a)(2)(E), the alleged conduct in Paragraph 76 has no relation to Ms. Williams' conduct on January 6th.  Since the PSR does not reference USSG § 4A1.3(a)(2)(E), it is assumed that the information in Paragraph 76 is provided for the purpose of that guideline.

To the extent the information contained in Paragraph 76 is included under the guise of "relevant conduct," courts have observed that "the relevant conduct guideline is not boundless and have refused to allow sentencing courts to use it to sweep in uncharged, wholly unrelated criminality that occurred contemporaneously with the charged conduct." *See United States v. Nance*, 611 F.3d 409 (7th Cir. 2010) (citing *United States v. Taylor,* 272 F3d 980, 983 (7th Cir. 2001) and *United States v. Ritsema*, 31 F.3d 559, 567 (7th Cir. 1994)); *see also United States v. Berry*, 553 F.3d 273 (3d Cir. 2009) (sentencing courts cannot base sentencing decisions on bare arrest records).  Ms. Williams submits that the information contained in Paragraph 76 should be stricken from the report because it is uncharged conduct that is unrelated to the matter at hand.

### III.   THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES, 18 U.S.C. § 3553(a)(6)

18 U.S.C. § 3553(a)(6) instructs that one of the factors to be considered by the court when imposing sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As the Court is aware, hundreds of individuals have been prosecuted in this District for the events of January 6th. Although the tragedy of January 6th was experienced by this Nation as a whole, each individual prosecuted in connection with the events of that day is unique. Ms. Williams is no exception. In some respects, she is starkly different from the average January 6th defendant – particularly given her youth and that she is a female. In other ways she is similar to many of other January 6th defendants with no prior criminal record, that were caught up with the mob that day, acting on impulse and without thought to the consequences of their actions.

In order to give appropriate consideration to the sixth 18 U.S.C. § 3553(a) factor – the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct – defense counsel has undertaken a review of dozens of January 6th cases where sentence has been imposed. Even though there is a wealth of material to sort through, what has become obvious to counsel is that Ms. Williams' case is different from most in many ways. Quite obviously, Ms. Williams' went to trial, while the vast majority of January 6th defendants pled guilty pursuant to a plea agreement, as such in most of the cases listed below, the defendant received a 2-level reduction for acceptance of responsibility, which Ms. Williams has not. But what is equally clear is that Ms. Williams' *physical* conduct that day pales in comparison to what many January 6th offenders did on that day. She did not physically

strike any officers or throw things at them or discharge a spray or taser them.  And yet, the PSR as written assigns her a guideline range that exceeds many of the sentences listed below.[8]

Ms. Williams' submits that the facts of her case are similar to several cases where January 6th defendants were permitted to plead guilty to Civil Disorder, 18 U.S.C. § 231.

- *US v. Aaron Mostofsky*, 21-cr-138 (JEB): Defendant sentenced to 8 months' incarceration after pleading guilty to 18 U.S.C. § 231(a)(3) and § 641.  Mostofsky's guideline range was 10-16 months.  He was accused of forcibly engaging in confrontation with police by pushing against a barrier with all of his strength to resist officer efforts to contain the riot.  Mr. Mostofsky also took a bullet proof vest that a Capitol Police officer was wearing and later wore the vest along with a riot shield he found.  Similar to Ms. Williams, Mr. Mostofsky was in the first wave of people who entered through the breached Senate wing door.

- *US v. Jerry Ryals*, 21-cr-244 (CKK): Defendant sentenced to 9 months' incarceration after pleading guilty to 18 U.S.C. § 231(a)(3).  He filmed himself entering the Capitol saying "we definitely have enough people to overthrow this bitch," and attempted to break down a locked office door with his shoulders. On January 7th, Ryals posted a statement on Facebook calling himself a "patriot" and that the country was headed for war.

- *US v. Daniel Johnson*, 21-cr-407 (DLF): Defendant sentenced to 4 months' imprisonment after pleading guilty to 18 U.S.C. § 231(a)(3).  Defendant, along with his father, climbed through a broken window to enter the Capitol.  Johnson was part of a mob yelling and chanting at officers and pinning them against the east Rotunda doors, as those officers

---

[8] All of the comparators listed below are felony convictions.

were attempting to prevent the doors from being breached from rioters outside, although Johnson himself did not touch the officers.

- *US v. David Blair*, 21-cr-186 (CRC): Defendant sentenced to 5 months' incarceration after pleading guilty to 18 U.S.C. § 231(a)(3), with a resulting guideline range of 8 to 12 months.  Mr. Blair brought a knife and was carrying a lacrosse stick with a large Confederate flag attached to it and used that stick to push against a police officer's chest in a provocative manner.  The sentencing court considered Blair's age and that he was a first-time offender to be reasons for a downward variance.

- *US v. Cooke*, 22-cr-52 (RCL): Defendant sentenced to 12 months and a day after pleading guilty to 18 U.S.C. § 231(a)(1).  Cooke joined a crowd confronting officers on the East Side of the Capitol.  He grabbed and pushed the bicycle racks being used to block the crowd into officers, held up his middle finger to officers and yelled profanities such as "We're taking this motherfucker" and "this is our fucking house."  Cooke encouraged other rioters to push against the police line and struggled with officers himself at the Columbus Doors.  While near the doors, he asked the crowd "who's got a hammer" and encouraged others to "smash the windows."  Another rioter did break a window with a hammer and Cooke, armed with a flagpole, hit the broken window several times.  Cooke was only deterred from entering the Capitol after he was pepper-sprayed.

Standing in stark contrast to Ms. Williams's conduct is the conduct of January 6th defendants who have pled guilty to assaulting officers, under 18 U.S.C. § 111(a)(1).  This group of defendants was significantly more physical and violent than the civil disorder group above.

- *US v. Kyle Young*, 21-cr-291(ABJ): Defendant sentenced by this Honorable Court to 86 months' incarceration for assaulting Officer Fanone.  As your Honor is aware, Young physically restrained Officer Fanone immediately after the officer had been tased in the

14

back of the neck by another rioter, rendering the officer helpless and unable to seek safety.

- *US v. Head*, 21-cr-291(ABJ): Defendant sentenced by this Honorable Court to 90 months' incarceration for his participation in the assault of Officer Fanone, which included dragging the officer into the violent mob. Head also used a plastic riot shield as a weapon against the police in the tunnel, specifically Officer Fanone. Head had a lengthy criminal history.

- *US v. Languerand*, 21-cr-353 (JDB): Defendant sentenced to 44 months' imprisonment after pleading guilty to 18 U.S.C. § 111(a)(1) and (b). Defendant threw multiple objects at the police officers guarding the Capitol in the Lower West Terrace tunnel, and afterwards bragged about his role in the riot on social media.

- *US v. Devlyn Thompson*, 21-cr-461 (RCL): Defendant sentenced to 46 months' imprisonment after pleading guilty to 18 U.S.C. § 111(a)(1) and (b). Thompson fought with officers in the Lower West Terrace tunnel for approximately 13 minutes. He threw objects at officers, and hit one officer in the hand with a metal baton, causing bruising.

- *US v. Creek*, 21-cr-645 (DLF): Defendant was sentenced to a 27-month term of imprisonment after pleading guilty to 18 U.S.C. § 111(a)(1). Creek came armed to the Capitol with mace, a knife, binoculars and a radio and carried first-aid supplies. He shoved one police officer back several feet before striking that officer on the face shield portion of his helmet and also pushed a second officer down and kicked him.

- *US v. Duke Wilson,* 21-cr-34 (RCL): Defendant was sentenced to a 51-month term of imprisonment after pleading guilty to violations of 18 U.S.C. § 111(a)(1) and 18 U.S.C. § 1512(c). Wilson, over the course of 14 minutes, prevented officers from closing doors in

the Lower West Terrace tunnel, allowing other rioters to pry them open and attack officers.  Then, Wilson punched officers, attempted to take their shields, threw objects at them, and struck officers with a PVC pipe.

- *US v. Palmer*, 21-cr-328 (TSC): Defendant was sentenced to 63 months' imprisonment after pleading guilty to 18 U.S.C. § 111(a)(1) and (b).  Palmer threw a wood plank at officers, then deployed the contents of a fire extinguisher directly into the tunnel and threw the empty extinguisher at officers.  Palmer pushed and threw objects at the officers in the tunnel.  Later, on the Upper West Plaza, Palmer approached a line of officers, yelling at them and threw a pole at them.

- *US v. Miller*, 21-cr-75 (RDM): Defendant was sentenced to 33 months' incarceration after pleading guilty to 18 U.S.C. § 111(a) and 1512(c).  On the West Plaza, Miller threw a full beer can in the direction of police.  He then scaled a wall, went to the Lower west Terrance and threw objects and sprayed a fire extinguisher at officers in the tunnel.

- *US v. Mattice,* 21-cr-657(BAH): Defendant sentenced to 44-month term of incarceration after pleading guilty to 18 U.S.C. § 111(a)(1).  Mattice deployed a chemical irritant at officers at the mouth of the Lower West Terrace tunnel.  Mattice had a criminal history category of I.

The outcome in these cases show a significant, and appropriate, difference in the sentences imposed for defendants who pled to civil disorder and those who pled guilty to an assault charge, either under 18 U.S.C. §111(a)(1) or (b).  Ms. Williams submits that an appropriate sentence in her case is somewhat above the civil disorder cases listed in the first group, but far below the physical assaults described in the second group of cases.

**IV.     18 U.S.C. § 3553(a) FACTORS FILED UNDER SEAL.**

**V.      CONCLUSION**

Ms. Williams respectfully requests that the Court sentence her to a term of imprisonment of 12 months and 1 day.  A sentence of 12 months and 1 day is reflective of the seriousness of Ms. Williams' conduct of January 6th and provides just punishment for what she did on that day. It also is reflective of Ms. Williams' characteristics – particularly her youth and lack of appropriate parental guidance, and takes into account that she has no criminal history.

Date:   February 13, 2023                                    Respectfully submitted:

                                                             */s/ Lori J. Ulrich*
                                                             LORI J. ULRICH, ESQUIRE
                                                             Assistant Federal Public Defender
                                                             */s/ Brandon R. Reish*
                                                             BRANDON R. REISH, ESQUIRE
                                                             Assistant Federal Public Defender
                                                             */s/ Amanda R. Gaynor*
                                                             AMANDA R. GAYNOR, ESQUIRE
                                                             Staff Attorney

                                                             100 Chestnut Street, Suite 306
                                                             Harrisburg, PA 17101
                                                             Tel. No. (717) 782-2237
                                                             Fax No. (717) 782-3881
                                                             *lori_ulrich@fd.org*
                                                             *brandon_reish@fd.org*
                                                             *amanda_gaynor@fd.org*

                                                             *Attorneys for Riley June Williams*

## CERTIFICATE OF SERVICE

I, Lori J. Ulrich, Esquire, of the Federal Public Defender's Office, do hereby certify that I served a copy of the foregoing **Defendant's Sentencing Memorandum** via Electronic Case Filing, and/or by placing a copy in the United States mail, first class in Harrisburg, Pennsylvania, and/or by hand delivery, addressed to the following:

Samuel Dalke, Esquire
Assistant United States Attorney
*samuel.s.dalke@usdoj.gov*

Michael Gordon, Esquire
Assistant United States Attorney
*michael.gordon3@usdoj.gov*

RILEY JUNE WILLIAMS


Date:  February 13, 2023

*/s/ Lori J. Ulrich*
LORI J. ULRICH, ESQUIRE
Assistant Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Tel. No. (717) 782-2237
Fax No. (717) 782-3881
lori_ulrich@fd.org
*Attorney for Riley June Williams*